## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Seth Sims and Cecily Sims,

        Plaintiffs,

v.

United States of America,

        Defendant.

No. 20 CV 03993

Honorable Nancy L. Maldonado

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is a motion by Plaintiffs Seth Sims and Cecily Sims ("Plaintiffs") brought pursuant to 28 U.S.C. § 2675(b) to increase the amount of their claims based upon newly discovered evidence and intervening acts. (Dkt. 60.)[1] The Court has reviewed the parties' briefs and associated exhibits. (Dkts. 60, 68, 71, 74.)[2] For the reasons stated in this Opinion and Order, the Court finds that Plaintiffs have not met their burden to show that either of the statutory requirements for increasing the amount of their claims is met. The Court agrees with the Government that Plaintiffs' original administrative claim only provided notice of a demand for $3 million total for both Plaintiffs, not $3 million for each Plaintiff, as they maintain in their briefing. Plaintiffs' motion is therefore denied, and Plaintiffs' potential recovery in this case will be limited to $3 million total, the amount sought in their administrative claim.

---

[1] Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

[2] Many of the exhibits submitted by the parties in support of their positions have been filed under seal. The Court has found it necessary to refer to some of those sealed filings in this decision, but the Court has attempted to do so without revealing any information that could be reasonably deemed confidential. To the extent the Court has discussed confidential information, however, the Court has done so because it is necessary to explain the path of its reasoning. *See In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000).

## Background

Plaintiffs bring this medical malpractice action against the United States under the Federal Tort Claims Act ("FTCA") alleging that medical providers at the Veterans Administration ("VA") breached the standard of care when treating Seth Sims.

Mr. Sims was admitted to the Captain James A. Lovell Federal Health Care Center ("LFHCC") in August 2017 with complaints of abdominal discomfort, nausea, and vomiting. (Dkt. 43 at ¶¶ 14-15; Dkt. 1-1 at 3.)[3] During his hospital stay, Mr. Sims was seen by a gastroenterologist and general surgeon and underwent a series of tests, including a CT scan of his abdomen and several stool antigen tests for the bacteria Helicobacter pylori ("H. pylori"). (Dkt. 43 at ¶¶ 16-18; Dkt. 1-1 at 3.) The CT scan demonstrated conditions consistent with duodenitis/peptic ulcer disease, and one of the H. pylori tests revealed a positive result though that result was not shared with him. (Dkt. 1-1 at 3-4.) Mr. Sims also had an upper endoscopy which identified a partially obstructing ulcer in the duodenum, the first part of the small intestine that connects to the stomach. *Id.* After several follow-up endoscopies revealed that the ulcer was not healing, Mr. Sims eventually underwent an antrectomy with truncal vagotomy surgery in March 2018. *Id.*.

Mr. Sims was discharged from the hospital on April 3, 2018, but returned the next day with abdominal pain. *Id.* at 4. He was found to have a leak at the duodenal stump, which required further surgery to address. *Id.* Mr. Sims suffered further complications, including sepsis and fluid collection in the abdomen, before being discharged home later in April 2018. *Id.* Mr. Sims alleges that a few months later in 2018, he was finally informed of the previous H. pylori diagnosis, and began receiving treatment with the appropriate medication, which eradicated the H. pylori. *Id.*

---

[3] The Court presents Plaintiffs' allegations regarding Mr. Sims's medical condition and treatment for background purposes only, and offers no opinion on the ultimate truth of any allegation asserted.

On August 13, 2019, Plaintiffs initiated an administrative claim by submitting two copies of Standard Form 95, "Claim for Damage, Injury, or Death," to the U.S. Department of Health and Human Services ("HHS"). (Dkt. 70 at 18.) One copy of the form was signed by Mr. Sims, and one was signed by his wife Cecily Sims. *Id.* at 19, 65. As discussed further below, apart from the different signatures, the two copies of the form and the attachments to them are identical.

As for the information that Plaintiffs provided in the forms, box 2 of Standard Form 95 asks for the name and address of the claimant, and Plaintiffs responded by listing both of their names. *Id.* Box 8 of the form asks the claimant to state in detail the facts and circumstances that form the basis of their claims, and box 10 asks the claimant to describe the nature and extent of their injuries. Plaintiffs responded to both questions by referring to an attached addendum. *Id.* As to box 8 and the basis of the claim, the referenced attachment summarizes Mr. Sims's treatment history and alleges that his attending physicians at LFHCC breached the applicable standard of care by, among other things, failing to timely diagnose and treat Mr. Sims's H. pylori, by performing "unnecessary and contraindicated" surgery, and by failing to timely diagnose and treat Mr. Sims's post-surgery complications. *Id.* at 21-22, 67-68. As to box 10 and the "nature and extent of each injury," the attachment states that Mr. Sims "underwent unnecessary surgical interventions" which resulted in several complications, and that he continues to suffer from "severe and disabling gastrointestinal symptoms, including 'dumping' syndrome, persistent diarrhea, nausea, lightheadedness and fatigue caused by rapid gastric emptying, secondary to the unnecessary surgical procedures." *Id.* at 22, 68. The attachment goes on to state that Mr. Sims is "at risk for lifelong complications, including bowel obstructions and adhesions, resulting from the unnecessary surgical procedures and peritonitis and abdominal abscess that followed therefrom."

*Id.* Both forms contain an attachment describing Mrs. Sims' injuries as "loss of care, comfort, society and services of her husband . . . ." *Id*. Finally, in box 12 of the form asking for the amount of the claim, the Plaintiffs listed $3 million under "Personal Injury" in box 12(b) on each copy of the form. *Id.* at 19, 65. By signing the claim form, each Plaintiff certified that they would "agree to accept said amount in full satisfaction and final settlement of [their] claim." *Id.*

After the Government did not act on their administrative claim, the Plaintiffs initiated the instant lawsuit against the United States on July 8, 2020. (Dkt. 1.) Notably, the Plaintiffs' complaint did not specify an amount of damages they were seeking. According to the Government, as the case progressed it became clear that Plaintiffs intended to seek more than the amount they had originally listed on the claim form. (Dkt. 68 at 4.)[4] The Government then advised Plaintiffs that they could not seek more than the $3 million they had listed on their administrative claim form, and so Plaintiffs proceeded to file the present motion seeking to increase the amount of their claim to $20 million. *Id.*

### Legal Standards

The FTCA is a limited waiver of sovereign immunity for the United States and "renders the federal government liable in tort as a private individual would be under like circumstances." *See Midwest Knitting Mills, Inc. v. United States*, 950 F.2d 1295, 1296-97 (7th Cir.1991); 28 U.S.C. §§ 1346(b), 2671–2680. Unlike plaintiffs seeking recovery from private individuals or entities, FTCA claimants must first submit their claim to the appropriate federal agency for a "sum

---

[4] The parties have completed fact discovery and were in the middle of expert discovery when on March 1, 2022, they jointly requested that the Court stay further discovery so they could engage in a settlement conference. (Dkt. 50.) The Court granted the parties' request, (Dkt. 51), and a settlement conference was held before the magistrate judge on July 11, 2022, but was unsuccessful. The case has remained stayed since that time pending the Court's resolution of Plaintiffs' instant motion.

certain" before commencing a lawsuit. *See Kanar v. United States*, 118 F.3d 527, 528-29 (7th Cir.1997); 28 U.S.C. § 2675. If the agency denies the claim, or if six months pass from the date the claim was submitted with no decision, then the claimant may initiate a civil lawsuit in federal court. 28 U.S.C.A. § 2675(a).

Under the FTCA, a claimant's "sum certain" demand in their initial administrative claim also acts as the cap on their potential recovery in any subsequent FTCA suit against the United States. 28 U.S.C. § 2675(b) ("[An] [a]ction under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency . . . ."). There are two exceptions to this rule under § 2675(b) where an FTCA plaintiff can seek an increase in the amount of their potential recovery beyond the amount they originally demanded: (1) "where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency"; or (2) where the plaintiff presents "proof of intervening facts, relating to the amount of the claim." *Id.* The burden is on the plaintiff to demonstrate that at least one of these exceptions is met. *Zurba v. United States*, 318 F.3d 736, 739 (7th Cir. 2003).

## Discussion

### A. Plaintiffs' initial cap on their potential recovery is $3 million total.

Before the Court reaches Plaintiffs' request to increase the amount of their claim to $20 million pursuant to 28 U.S.C. § 2675(b), the Court will first resolve the parties' disagreement as to the starting point of the cap on Plaintiffs' damages. While Plaintiffs' opening motion asks the Court to increase their claims from $3 million "each" to a total of $20 million, (Dkt. 60 at 1, 4), the Government repeatedly avers in its response that Plaintiffs' original claim sought $3 million *total* for both Plaintiffs. (Dkt. 68 at 3-4.) In their reply, Plaintiffs argue that their original

administrative claim to the VA was for $6 million, not $3 million, because Mr. and Mrs. Sims each signed and submitted a separate claim form, each listing a claim amount of $3 million. (Dkt. 71 at 1-2.) The reply brief includes supporting affidavits from Plaintiffs and their counsel, all of whom assert that Plaintiffs intended to submit separate FTCA claims seeking $3 million each for a total of $6 million. (Dkts. 71-1, 71-2, 71-3.) In its sur-reply, the Government responds by arguing that Mr. and Mrs. Sims's two claim forms are identical in all respects except for their different signatures. (Dkt. 74 at 2-4.) In particular, the Government notes that each form describes both Mr. Sims's personal injury claims and Mrs. Sims's loss of consortium injury as forming the basis for the listed $3 million demand. *Id.* at 3-4. The Government thus maintains that the fact that Mr. and Mrs. Sims signed and submitted duplicate forms "does not create another claim or duplicate the available recovery when the exact same injury is described in each form." *Id.* at 2.

The Seventh Circuit does not appear to have addressed what effect, if any, the filing of duplicative administrative claim forms has on the FTCA damages cap. The Government points the Court to a line of cases following the First Circuit's decision in *Roman-Cancel v. United States*, which the Government claims generally addressed the issue of duplicative forms. *See id.* at 3 (citing *Roman-Cancel v. United States*, 613 F.3d 37 (1st Cir. 2010); *Williamson v. United States*, No. 16 C 642, 2017 WL 735679, at *4 (S.D. Ind. Feb. 24, 2017); *Freeman v. United States*, 166 F. Supp. 3d 215 (D. Conn. 2016)). In *Roman-Cancel*, the First Circuit stated that there are generally two ways a court can consider a second, duplicative administrative claim: it is "either an attempt to re-file the original claim or an attempt to have the agency reconsider its disposition of the original claim." *Roman-Cancel*, 613 F.3d at 42. As another court in this district has observed, "Actually, there is a third possibility: the second claim could be considered as an amendment to

the original claim." *Cooper v. United States*, No. 20 C 2694, 2020 WL 7714211, at *3 (N.D. Ill. Dec. 29, 2020).

But the *Roman-Cancel* line of cases involved disputes over timeliness and whether a claimant's subsequent administrative claim form restarted the clock for that claimant to file suit in federal court after their original administrative claim was denied. *See, e.g.*, *Roman-Cancel*, 613 F.3d at 42.[5] The Court finds that these cases have little bearing on the issue here, which is not the timeliness of Plaintiffs' claims but what impact, if any, their duplicative claim forms have on the statutory cap on their damages. The parties have not identified, and the Court has not found, any relevant case law addressing precisely that issue.

The Government also points the Court to the underlying purpose of the FTCA and the "sum-certain" requirements of § 2675(b) as a guide to resolving the issue of Plaintiffs' duplicative forms. (Dkt. 74 at 3.) The Government notes that "[t]he manifest purpose of the sum certain requirements of § 2675 is to ensure that federal agencies charged with making an initial attempt to settle tort claims against the United States are given full notice of the Government's potential liability." *Id.* (quoting *Martinez v. United States*, 780 F.2d 525, 530 (5th Cir. 1986)). The Government maintains that when the Plaintiffs submitted their duplicate claim forms with the damages listed at $3 million, with both forms describing both Mr. and Mrs. Sims's injuries, the United States "had no way of knowing that they actually sought $6 million in damages and indeed,

---

[5] In *Roman-Cancel*, for example, the First Circuit found that the plaintiff's duplicate administrative claim form, which was filed eight months after his original administrative claim was denied, was a "nullity," because it did not indicate any changed circumstances or new facts since the original claim was filed. *Id.* The duplicate form also was not submitted within the period of time required for a request for reconsideration. 613 F.3d at 42. Thus, the court found that the submission of the second claim form had "no practical effect," and the plaintiff's time to file suit in federal court was triggered from the denial of his original administrative claim, and not the subsequent duplicate form, which made his federal lawsuit untimely. *Id.* at 43-44; *see also Williamson*, 2017 WL 735679, at *4 (dismissing a plaintiff's FTCA suit as untimely, because his administrative claim at issue was duplicative of a claim that was denied two years prior, and therefore his time to file suit had passed).

assessed their claim as totaling $3 million." *Id.* at 3-4. In other words, the Government argues that it only had notice of a claim for $3 million total for both Plaintiffs, and therefore that $3 million is the limit at which Plaintiffs' claims must be capped.

The Court finds the Government's argument by way of reference to the purpose of the FTCA persuasive. "[T]he underlying purpose of § 2675(b) is to put the government on notice of its maximum potential exposure to liability . . . ." *Zurba*, 318 F.3d at 743; *see also Rossi v. United States*, No. 10 C 1934, 2010 WL 3002074, at *2 (N.D. Ill. July 23, 2010) ("The sum certain requirement apprises the government of its possible liability and allows it to assess a claim's settlement value.") (citation omitted); *see also Adams v. United States*, 615 F.2d 284, 288–90 (5th Cir. 1980) (reviewing legislative history of 28 U.S.C. § 2675). In light of this overarching purpose, district courts are regularly required to analyze the four corners of FTCA claim forms in order to identify the proper claimants and the causes of action and damages demands for which the government has received notice. For example, district courts have regularly dismissed FTCA claims brought by spouses or family members of claimants where the administrative claim form did not provide the government notice of the additional claimants' causes of action and their sum-certain demand. *See, e.g.*, *Morisch v. United States*, Civil No. 07-145-GPM, 2009 WL 2972901, at *2 (S.D. Ill. Sept. 14, 2009) (dismissing loss of consortium claim by spouse of FTCA claimant where the administrative claim form only listed the spouse as a witness and did not describe her separate alleged injury of loss of services); *Saccuci v. United States*, No. CV-07-1277-PHX-SRB, 2008 WL 11338797, at *5-6 (D. Ariz. June 19, 2008) (dismissing loss of consortium claim brought by wife of FTCA claimant, because the husband's original administrative claim form did not identify his wife as a claimant, and the "dollar amounts [he] listed in his three claims were

insufficient notice of his wife's separate loss of consortium claim"); *Jensen v. United States*, Civil Action No. 09-2977, 2009 WL 4117357, at *3-4 (E.D. Pa. Nov. 24, 2009) (dismissing spouse's loss of consortium claim because, although she signed the administrative claim form, she submitted it on her husband's behalf, only listed him as the named claimant, and only described his injuries, therefore the government did not have notice of her independent claim); *see also Maravilla v. United States*, 867 F. Supp. 1363, 1372 (N.D. Ind. 1994) (holding that family members of deceased FTCA claimant could not pursue claims against the Government, because the original claim submitted to the administrative agency provided notice only of the primary claimant's alleged wrongful death and not of the family members' separate personal injury claims); *cf. Loper v. United States*, 904 F. Supp. 863, 866 (N.D. Ind. 1995) (denying Government motion to dismiss spouse's loss of consortium claim, finding that the spouse's signature on same administrative claim form signed by her husband provided notice to the Government of her separate claim).

The Court recognizes that this authority does not precisely map onto the issues presented here, but it supports the general proposition that notice to the Government on the claim form matters. The cases above generally discuss whether a proposed FTCA plaintiff's claims have been administratively exhausted under § 2675(a), *i.e.*, whether the claimant has provided notice of his claim by making a sum certain demand to the appropriate federal agency. There is no dispute, at least for purposes of the present motion, that both Mr. and Mrs. Sims appropriately exhausted their claims and made a sum certain demand. The dispute is simply about the amount of that demand: $3 million total or $6 million total. The Court finds the exhaustion caselaw instructive to the extent that it reinforces the principal that notice to the government controls the inquiry. Specifically, what

matters here is the notice that Plaintiffs provided within the four corners of their claim forms that the Government received. The question before the Court is thus whether Plaintiffs' duplicate claim forms put the Government on notice for a sum-certain demand of $3 million total, covering both Mr. Sims's injuries and Mrs. Sims's loss of consortium claims, or if it put the Government on notice that those claims were being asserted for $3 million each and $6 million total. Based on its review of the claim forms, the Court finds that Plaintiffs only put the Government on notice of a claim for $3 million total covering both of their injuries.

As the Government notes in its briefing, Mr. and Mrs. Sims's claim forms, and the attachments to them, are identical in nearly every way, with the sole exception being that one copy of the form is signed by Mr. Sims, and one copy is signed by Mrs. Sims. (*See* Dkt. 74 at 2; Dkt. 70 at 19-25, 65-71.) Plaintiffs and their counsel point to these separate signatures in their affidavits and argue that they clearly demonstrate that Plaintiffs intended to submit separate claims for $3 million each. (Dkt. 71-1 at ¶ 7; Dkt. 71-2 at ¶ 3; Dkt. 71-3 at ¶ 3.) But despite being signed separately, both claim forms indicate in box 2 that they are being submitted on behalf of both Seth Sims and Cecily Sims as the named claimants. (Dkt. 70 at 19, 65.) Thus, on the face of the forms, the $3 million figure stated under "personal injury" is the total demand that applies to both Mr. and Mrs. Sims jointly as the named claimants. Further, in response to the questions on the forms asking the claimants to describe the basis of their claims and the extent of their injuries, both forms refer to and incorporate identical attachments. These identical attachments describe both Mr. Sims's injuries and Mrs. Sims's loss of "care, comfort, society and services of her husband . . . ." (*See* Dkt. 70 at 21-22, 67-68.) In other words, while each form is signed separately and each lists $3 million as the damages amount, the purported basis of that $3 million demand is identical on

both forms and includes both Plaintiffs' alleged injuries together. From the identical language in the claim forms and the identical attachments, the $3 million demand covers both Plaintiffs jointly; each duplicate form indicates that the basis of the $3 million figure is the injuries to both Mr. and Mrs. Sims.

The Court therefore agrees with the Government that, on the face of the claim forms, the Plaintiffs provided notice of a claim for $3 million total for both of their injuries. This reading of the claim forms is reinforced by some of the circumstances surrounding the Plaintiffs' submission of their claim. For example, Plaintiffs' counsel's transmittal letter of the claim forms to the HHS states, "Enclosed please find the original and two copies of Form 95 Claim for Damages, Injury or Death on behalf of Seth Sims and Cecily Sims." The most natural reading of this statement is that counsel was submitting a single claim on behalf of both Plaintiffs, which would reinforce reading the $3 million figure listed under damages as the total for both Mr. and Mrs. Sims, especially considering that, as discussed above, each duplicate form listed both Mr. and Mrs. Sims as the named claimants. Additionally, the Court finds persuasive the Government's argument that if Plaintiffs had intended to submit two separate claims (as they maintain they did), then one would expect the "sum-certain" demands to be different for each plaintiff. (*See* Dkt. 74 at 3) (arguing that "Cecily Sim's loss of consortium damages could hardly be as high as her husbands'.") It seems unlikely as a general matter that a party's loss of consortium claim would be asserted for the same exact amount of damages as their spouse's underlying personal injury. That is particularly true here, given that the claim forms describe Mr. Sims's treatment and alleged injuries in fairly significant detail, but only describe Mrs. Sims's loss of consortium claim in a single sentence. Mrs. Sims's loss of consortium claim is a separate and distinct cause of action under Illinois law, and

her damages are assessed independently. *See Baker v. City of Chicago*, 483 F. Supp. 3d 543, 561 (N.D. Ill. 2020); *Pease v. Ace Hardware Home Ctr. of Round Lake No. 252c*, 498 N.E.2d 343, 349 (Ill. App. Ct. 1986).[6] The Court finds it somewhat implausible that Mrs. Sims would be independently claiming the exact same amount in damages as Mr. Sims for his injuries, given the disparate descriptions of the injuries and the fact that damages are assessed separately. At the very least, this implausibility lends further support to the Government's reading of the duplicate forms as having provided notice of a claim for $3 million total, and not two separate claims with identical $3 million demands.

The Court acknowledges that it is at least possible to read the separately signed forms in the way that Plaintiffs and their counsel insist was intended: that Mr. and Mrs. Sims were each submitting separate claims for $3 million. The Court accepts Plaintiffs' and their counsel's sworn statements that this is what they intended and have always believed was the case. Unfortunately, Plaintiffs have provided the Court with no authority that their intent controls the inquiry. Rather, as the case law cited above makes clear, the controlling question is what notice was provided to the Government by the claim forms. While Plaintiffs and their counsel may have believed that the submission of duplicate but separately signed claim forms was sufficient, the Court finds that the separately signed forms did not provide notice to the Government of two separate $3 million claims. Instead, as discussed above, the Court finds that the claim forms only provided notice of a $3 million sum-certain demand for *both* Mr. and Mrs. Sims's injuries, given that the forms are identical, list both Plaintiffs' names as the named claimants, and describe both of their injuries

---

[6] Under the FTCA, the Government's liability is determined according to the law of the state where the alleged acts or omissions that form the basis of the claim took place. *See* 28 U.S.C.A. § 1346(b)(1). Mrs. Sims's loss of consortium claim is thus governed by Illinois law. *See, e.g.*, *Willis v. United States*, No. 96 C 7810, 1997 WL 119986, at *2 (N.D. Ill. Mar. 13, 1997).

jointly as the basis of a listed $3 million demand. *See Saccuci*, 2008 WL 11338797, at \*6 ("[T]he dollar amounts Plaintiff listed in his three claims were insufficient notice of his wife's separate loss of consortium claim. The amounts would not have given the VA any guidance in attempting to settle Mrs. Saccuci's claim, since they did not allow for a 'realistic assessment' of her claim."); *Jensen*, 2009 WL 4117357, at \*3 n.5 ("[T]he agency cannot assess realistically the scope of its liability if it lacks notice that the sum certain listed on a claim represents the damages asserted by multiple claimants and cannot discern the relative size of each person's claim for damages.").

If Plaintiffs had intended to provide the Government with notice of two separate claims for $3 million each, it was necessary to make that fact explicit, particularly in light of the express statutory cap on damages in § 2675(b) and the case law indicating that the purpose of the sum-certain demand provision is to provide notice to the Government of its maximum exposure in order to facilitate settlement. *See Zurba*, 318 F.3d at 743. There were numerous ways here that Plaintiffs' counsel, who prepared and submitted the claim forms, could have explicitly provided notice to the Government that its maximum exposure was for $6 million and that Mr. and Mrs. Sims were each independently seeking up to $3 million in damages. For example, each of the Sims' claim forms could have listed them separately as individual named claimants instead of listing both of their names together on both forms. Similarly, the attached narrative responses to the questions providing the factual basis of the claims and injuries could have been individualized and specific to each individual plaintiff, instead of being exact duplicates describing both Plaintiffs' claims and presenting them jointly. While Mrs. Sims's loss of consortium injury is necessarily related to Mr. Sims's underlying injuries and there may have still been overlap in the descriptions, such separate forms describing separate injuries would have put the Government on notice of two separate claims

and thus two separate damages demands. Along those lines, Plaintiffs' counsel could have simply expressly stated either in the claim forms, or in their transmittal letter to the Government, that each of Mr. Sims and Mrs. Sims were individually seeking $3 million, and that their *total* demand was for $6 million. Indeed, the Court notes that the Standard Form 95 that Plaintiffs submitted includes a "total damages" box, in which Plaintiffs' counsel could presumably have indicated that $6 million was the total amount of the claims. As it is though, the only potential indication that Plaintiffs were each independently seeking $3 million is their separate signatures. But, as discussed above, the Court finds that the separate signatures on otherwise duplicate forms covering both Plaintiffs was not sufficient notice of two claims for $6 million total.

In sum, Plaintiffs only provided notice of a $3 million sum-certain demand covering both of their injuries. Three million is therefore the limit on their potential recovery in this action unless they can demonstrate that either of the statutory exceptions under 28 U.S.C. § 2675(b) is satisfied.

### B. Plaintiffs have not met their burden to show that either of the statutory exceptions for increasing the amount of their claim is met.

Having established that the starting point for Plaintiffs' damages cap is $3 million, the Court next turns to whether Plaintiffs have met their burden to establish that either of the statutory exceptions to the cap is met and they should be permitted to increase their claim to $20 million. As noted above, under 28 U.S.C. § 2675(b) Plaintiffs' recovery is limited to the amount they demanded from the federal agency except: (1) "where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency"; or (2) where the plaintiff presents "proof of intervening facts, relating to the amount of the claim."

14

In *Zurba*, the Seventh Circuit provided guidance on what qualifies as "newly discovered evidence" or "intervening facts" in the context of § 2675(b). *See Zurba*, 318 F.3d at 743. In *Zurba*, the plaintiff was struck by a vehicle driven by an FBI agent and filed an administrative claim with the FBI seeking $300,000 in damages. *Id.* at 737. Prior to filing the claim, Zurba suffered from several anxiety-related conditions. *Id.* at 737–38. After the United States denied her claim, Zurba filed suit against the Government, seeking $1 million in damages. *Id.* at 738. The district court denied a Government motion to limit Zurba's damages to $300,000, finding that Zurba had presented newly discovered evidence and intervening facts showing that her psychological injuries had become significantly worse after she had filed her claim. *Id.* at 738–40. In affirming the district court opinion, the Seventh Circuit held that "[a]n unforeseen worsening of a known injury may constitute 'newly discovered evidence' or 'intervening facts' under § 2675(b) . . . ." 318 F.3d at 739. The court went on to explain that evidence which "merely bears on the precision of the victim's prognosis is not newly discovered evidence." *Id.* Rather, information is considered "newly discovered evidence or an intervening fact" if it "sheds new light on the basic severity of the claimant's condition—that is, if it materially differs from the worst-case prognosis of which the claimant knew or could reasonably have known when the claim was filed." *Id.* at 741 (emphasis omitted) (quoting *Lebron v. United States*, 279 F.3d 321, 330 (5th Cir. 2002)); *see also id.* at 740 (evidence which "serves only to bear out earlier suspicions cannot unlock FTCA's narrow escape hatch") (quoting *Reilly v. United States*, 863 F.2d 149 (1st Cir. 1988)). The court noted the evidence of the increased severity of Zurba's emotional symptoms after she filed her administrative claim, and that the evidence established she did not know she suffered from two diagnosed psychiatric conditions until nearly five years after she had filed her claim. *Id.* The court

15

held that the district court reasonably concluded that this evidence constituted newly discovered evidence or intervening facts warranting an increase in her damages under § 2675(b).

The question before the Court is thus whether Plaintiffs have pointed to evidence "not reasonably discoverable" at the time of their claim that "sheds new light on the basic severity" of Mr. Sims's condition, or whether there has been "an unforeseen worsening" of his or Mrs. Sims's injuries.

Plaintiffs argue that when filing their claim, "it was not known that Seth Sims was not advised of the full nature and extent of the negligent acts by employees and the administration of the VA" and that it has only been through discovery in this federal suit that they have learned "the extent of the liability of the VA and its agents and employees." (Dkt. 60 at 1-2.) For example, Plaintiffs contend they were unaware at the time of their administrative claim that Mr. Sims's H. pylori infection had been missed by all his attending physicians, and that they only learned through discovery the extent to which his treaters made negligent communications and procedural errors while treating him. (Dkt. 71 at 2-3.) Plaintiffs also contend that it was not known at the time of their administrative claim that Mr. Sims would require "further drastic surgery," nor was it known the degree to which his conditions would severely and permanently affect him and Mrs. Sims. (Dkt. 60 at 2.) Specifically, Plaintiffs' claim that Mr. Sims did not know he would suffer from "life-long and prolonged bouts of diarrhea" or that he would "suffer malnutrition, cardiac and arthritic problems such as metabolic bone disease and anorexia," which they contend may require parenteral nutrition and possibly further surgery. (Dkt. 71 at 2-3.) Plaintiffs also allege they could not have known the lasting effects on Mr. and Mrs. Sims's marital and family life. *Id.* at 3. Plaintiffs thus argue that there has been newly discovered evidence not reasonably discoverable at

16

the time of presenting their claim, and that the intervening years have shed light on the severity of both their injuries, warranting an increase of damages under 28 U.S.C. § 2675(b).

The Government argues in response that Plaintiffs have failed to meet their burden to show that either exception under § 2675(b) applies. The Government, citing to *Zurba*, argues that Plaintiffs have not pointed to any newly discovered evidence or intervening facts indicating that Mr. Sims's condition is worse than might have been expected at the time of his administrative claim. The Government claims that the description of Mr. Sims's injuries in the claim form "makes clear that the Simses believed at that time that Seth Sims had suffered very significant injuries and that the injuries would be long-lasting and chronic, characterizing his injuries as 'severe' and 'disabling' and that he 'continued to suffer' from them, indicating no expectation of improvement." (Dkt. 68 at 8.) Thus, the Government argues that the Sims' claim form makes clear that the Sims were aware of the permanence and severity of Mr. Sims's conditions when they filed their claim, and that Plaintiffs have failed to point to any evidence showing his condition is materially worse than "the worst-case prognosis of which the claimant knew or could reasonably have known when the claim was filed." *Id.* at 11 (quoting *Zurba*, 318 F.3d at 741). Additionally, the Government argues that intervening facts actually show that Mr. Sims's condition has improved since the filing of his administrative claim, as demonstrated by records showing that his condition improved after his subsequent surgery and that he has returned to work. *Id.* at 11-12. Regarding the Plaintiffs' references to newly discovered evidence about the scope of the alleged negligent acts by the VA and its agents, the Government claims any such evidence is irrelevant. (Dkt. 68 at 14.) Specifically, the Government argues that the nature and extent of any alleged negligent conduct is a distinct issue from the assessment of Plaintiffs' alleged damages, and that

17

whether the alleged breach of the standard of care was more severe than previously known does not impact the damages associated with the claim. *Id.*; (Dkt. 74 at 6).[7]

The Court agrees with the Government and finds that Plaintiffs have not met their burden to show that either of the statutory exceptions to the limit on their recovery is met. Although Plaintiffs claim at several points in their briefing and supporting affidavits that they could not have known the severity and permanence of Mr. Sims's injuries at the time they filed their administrative claim, the information they provided on the administrative claim form suggests the opposite. The attachment to the administrative claim form states that Mr. Sims suffered and continued to suffer "severe and disabling gastrointestinal symptoms, including 'dumping' syndrome, persistent diarrhea, nausea, lightheadedness and fatigue caused by rapid gastric emptying." (Dkt. 70 at 22.) The attachment goes on to state that Mr. Sims "is at risk for lifelong complications, including bowel obstructions and adhesions." *Id.* Plaintiffs' conclusory claims that they could not have known at the time they filed their administrative claim that Mr. Sims's "injuries would be so severe" or that he would suffer exhaustion and "life-long and prolonged bouts of diarrhea," are thus directly contradicted by the claim form itself, which demonstrates that Plaintiffs were aware that Mr. Sims's condition was severe and disabling and would lead to lifelong complications.

To the extent that Plaintiffs claim they were not aware of particular future complications from Mr. Sims's injuries, such as "malnutrition, cardiac and arthritic problems such as metabolic

---

[7] The Government additionally argues that Plaintiffs' motion is untimely. (Dkt. 68 at 14.) Because the Court finds that Plaintiffs have failed to meet their burden to show an increase in damages is warranted, it need not decide whether their motion is also untimely. The Court does note, however, that Plaintiffs had the opportunity to amend their FTCA claim prior to filing suit in federal court. See 28 C.F.R. § 14.2(c). Thus, to the extent there is medical evidence from after the FTCA claim was filed, but before the federal case was initiated, that Plaintiffs believe would have supported a higher damages claim, the proper course would have been to amend their claim before filing suit in federal court.

bone disease and anorexia," or that he would require further "drastic surgery," Plaintiffs have not demonstrated that this evidence satisfies the standards set out under *Zurba*. It is Plaintiffs' burden to show that the statutory requirements for increasing the amount of their recovery are met, but they have not pointed to any specific evidence supporting the claims in their affidavits that they could not have reasonably known further surgery was possible, or that they could not have known that the "life-long complications" they expected Mr. Sims to suffer would include issues such as the potential for malnutrition or cardiac and arthritic problems. In other words, Plaintiffs' claims strike the Court as the kind which merely bear on the "precision" of Mr. Sims's prognosis, and they have not shown that these issues are "materially different" than the "worst-case prognosis" that Plaintiffs could reasonably have known when their claim was filed. *Zurba*, 318 F.3d at 740–41. Nor have Plaintiffs presented any evidence showing that the need for further surgery or the risk of malnutrition, cardiac, and arthritic problems are due to an "unforeseen worsening" of Mr. Sims's conditions. *Id.* at 739. In the absence of any evidence to the contrary, the Court agrees with the Government that the possibility of future surgery and the ongoing issues Mr. Sims has experienced are within the "worst-case" prognosis of Mr. Sims's diagnosis of dumping syndrome and what he admitted at the time of his administrative claim were severe and disabling symptoms with potential lifelong complications.[8]

---

[8] There are other issues with Plaintiffs' argument that Mr. Sims's need for further surgery in particular supports an increase in damages. As the Government argues in its response, there is record evidence to suggest that subsequent surgery may have improved Mr. Sims's condition, or at the very least, led to no change in his condition. (Dkt. 68 at 11-12.) The surgery thus cannot be said to be an "intervening fact" that made Mr. Sims's condition worse than Plaintiffs reasonably could have known at the time of their administrative claim. Further, the Government has submitted evidence that the medical bills associated with Mr. Sims's subsequent surgery total $97,491, which strikes the Court as a sum that would have reasonably been anticipated at the time Plaintiffs filed their claim, given the severe nature of Mr. Sims's condition and the anticipated "life-long" complications. (Dkt. 68 at 12; Dkt. 68-7.) Plaintiffs also admit that Mr. Sims has returned to work, which does suggest at least some level of improvement and undercuts any suggestion that intervening facts have led to a "worsening" of Mr. Sims's condition.

Regarding Mrs. Sims's loss of consortium claim, Plaintiffs have similarly failed to demonstrate that Mrs. Sims's injury exceeds the "worst case" of what reasonably could have been known at the time of the administrative claim. Plaintiffs claim it was not known they "would have a medically altered personal and intimate relationship, including the ability to socialize with family, friends, advise [Mr. Sims's] children equally and enjoy each other's company to the fullest causing anguish, sorrow, and emotional distress." (Dkt. 60 at 2.) Mrs. Sims, however, specifically claimed the loss of "care, comfort, society and services of her husband" in the administrative claim, which encompasses the same injuries Plaintiffs point to here as allegedly "newly discovered" evidence justifying an increase in their claims. The possibility that Mr. Sims's injuries would impact their social and family life thus appears to have been reasonably known at the time of the filing of the administrative claim, and possibilities that were "known from the start" or which merely "bear out earlier suspicions" do not constitute "newly discovered evidence" or "intervening facts" for the purposes of § 2675(b). *Zurba*, 318 F.3d at 740 (citing *Reilly,* 863 F.2d at 171). Plaintiffs' summary assertions to the contrary that they could not have known are regrettably insufficient.

Even if the Court were to accept Plaintiffs' claims in their affidavits that they could not have known the full severity and permanence of Mr. Sims's injuries, this would not justify an increase in damages. For information to be newly discovered, it must not have been "reasonably discoverable by the plaintiff's due diligence." *See Ekpo v. United States*, No. 91 C 6418, 1992 WL 346416, at *3 (N.D. Ill. Nov. 18, 1992) (citing *Low v. United States*, 795 F.2d 466, 470 (5th Cir. 1986)). It is thus an FTCA claimant's obligation, in consultation with their counsel, to "exercise diligence in determining the nature and scope of [their] injuries prior to setting forth in [their] SF95

20

form the sum certain that [they] believed would compensate [them] for [their] damages." *Henriksen v. United States*, No. 09 C 2398, 2011 WL 856657, at *3 (N.D. Ill. Mar. 9, 2011) (citation omitted). Mr. Sims here was diagnosed with dumping syndrome prior to the filing of his administrative claim, and in Plaintiffs' own words the condition was known to be "severe" and "debilitating" with the potential for lifelong complications. It was thus incumbent on Plaintiffs and their counsel to exercise due diligence in determining the full scope of their injuries prior to making a sum-certain demand, including by contemplating the "'worst-case scenario' when [their] original claim was made." *Id.* at *4 (citing *Dickerson v. United States*, 280 F.3d 470, 476 (5th Cir. 2002) (holding that plaintiffs could not increase their damages sought because they could have reasonably obtained the information needed to make out the worst-case scenario when the original administrative claim was made). While Plaintiffs and their counsel may now believe that more than $3 million in damages is warranted based on their injuries, they have failed to identify any relevant evidence that would not have been reasonably discoverable had they exercised due diligence in investigating and evaluating their claim prior to submitting their claim form and making a sum-certain demand.[9]

---

[9] Plaintiffs' counsel states in her affidavit that at the time she was preparing Plaintiffs' administrative forms, she could not "gauge the value of the suit" as there had not been any discovery, and the information they needed was in the possession of the Government. (Dkt. 71-1 at 1-2.) However, as the Government notes in its sur-reply, it is always the case that an administrative claim is filed before any formal discovery has taken place, and this fact does not alleviate counsel of their obligation to consult with the claimant and exercise due diligence to investigate the claim before making a sum-certain demand. (Dkt. 74 at 6.) If that were not the case, an increase in damages in FTCA cases would almost always be warranted by the mere fact that no discovery had taken place prior to a claim being filed. But that is not the rule, and Plaintiffs must point to specific evidence that was not reasonably discoverable at the time their claim was filed. But neither Plaintiffs nor their counsel have identified any new evidence that only came to light in discovery that would not have been previously discoverable, or which shows that Plaintiffs' conditions or injuries are significantly and unforeseeably more severe than at the time the administrative claim was filed. To the extent Plaintiffs point to the newly discovered evidence regarding negligent acts by the Government or the agents, that is irrelevant to the issue of damages, as discussed further below.

Finally, as to Plaintiffs' argument that there is newly discovered evidence related to the alleged extent of the Government's or its agents' negligent conduct, such evidence is irrelevant to whether Plaintiffs' potential damages should be increased, though it might be relevant to Plaintiff's chances of success in proving liability and the settlement value of this case. If the Government is found liable, then Plaintiffs' damages will be assessed based on the nature and extent of their injuries, and evidence related to the alleged negligent acts by the Government or its agents does not "shed new light on the basic severity" of those injuries or have any relevance to whether the injuries themselves worsened in unforeseen ways after the filing of the administrative claim. Thus, such evidence related to liability, even if technically "newly discovered," is not the kind that warrants an increase in potential *damages* under § 2675(b), though the Government would of course do well to consider such evidence of negligence in evaluating the merits of Plaintiff's liability claim.

In sum, Plaintiffs have failed to point to any newly discovered evidence or intervening facts showing an unforeseen worsening of Mr. Sims's condition or evidence which materially differs from the worst-case prognosis of which Plaintiffs knew or reasonably could have known when their claim was filed. While Plaintiffs and their counsel may have taken a conservative view of their worst-case scenario and the damages they should seek, the Court concludes, based on the Plaintiffs' own statements on their administrative claim form, that the severe, disabling, and permanent nature of Mr. Sims's injuries and dumping syndrome, and its impact on Mrs. Sims, were foreseeable when Plaintiffs filed their administrative claim. Plaintiffs and their counsel thus could have accounted for the severe and permanent nature of Mr. Sims's injuries when assessing their damages demand in their administrative claim in the first instance. Accordingly, Plaintiffs'

22

motion to increase the amount of their claim pursuant to 28 U.S.C. § 2675(b), is denied.

## Conclusion

For the forgoing reasons, Plaintiffs' motion to increase the amount of their claims (Dkt. 60) is denied. Plaintiffs' potential damages in this case will be limited to $3 million total, the amount sought in their administrative claim.


ENTERED:     3/31/23

_____
Nancy L. Maldonado
United States District Court Judge

23